## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| MARK S. MERADO, on behalf of himself and all other persons and entities similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ASTRAZENECA PHARMACEUTICALS LP, ASTRAZENECA LP, ASTRAZENECA AB and AKTIEBOLAGET HASSLE,<br><br>Defendants | Civil Action No.<br><br><br><br>CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL |

Plaintiff, Mark S. Merado, on behalf of himself and all other persons and entities similarly situated, by and through his undersigned attorneys, brings this civil action against the above-captioned Defendants for injunctive relief as a result of Defendants', Astrazeneca Pharmaceuticals LP, Astrazeneca LP, Astrazeneca AB and Aktiebolaget Hassle (hereinafter "Defendants"), violation of the federal antitrust laws and alleges, upon knowledge as to himself and his acts, and upon information and belief as to all other matters, as follows:

### NATURE OF THE ACTION

1.    This action is brought under the federal antitrust statutes to remedy Defendants' anti-competitive activities in connection with the manufacture and sale of Toprol-XL, a brand-name, prescription drug.

2.    Toprol-XL, which is manufactured and marketed by Defendants, is a prescribed extended release drug that is used to treat hypertension, angina and congestive heart failure (together, hereinafter referred to as "cardiovascular disease"). Toprol-XL is sold in 25mg, 50mg

100mg and 200 mg doses. Toprol-XL is approved by the United States Food and Drug Administration (the "FDA").

    3.      To date, no competing brand-name drug and no generic version of Toprol-XL has been marketed in the United States. This lack of competition is a result of Defendants having unlawfully obtained patents in connection with Toprol-XL and maintained a monopoly for Toprol-XL through misrepresentations to the U.S. Patent and Trademark Office ("PTO"). Defendants subsequently engaged in sham patent infringement litigation against generic drug manufacturing companies which filed "Abbreviated New Drug Applications" ("ANDAs") for approval of a bioequivalent version of Toprol-XL. This sham litigation was commenced in order to enforce Defendants' unlawfully obtained patents, even though they knew or should have known that the patents were invalid and/or unenforceable. As a result of Defendants' unlawful, anti-competitive conduct, plaintiff and the Class (as defined herein) paid and continue to pay substantially higher, supra-competitive prices for Toprol-XL than they would have if competing and/or generic versions of the drug were available.

    4.      The United States District Court for the Eastern District of Missouri, Eastern Division, in an opinion issued on January 17, 2006, held that the patents at issue, Defendants' '161 and '154 patents (defined herein), were invalid and therefore unenforceable due to Defendants' inequitable conduct before the PTO during the prosecution of the patents at issue. In re Metoprolol Succinate Patent Litigation 2006 U.S. Dist. LEXIS 1328 (E.D. Mo).

    5.      Plaintiff brings this claim on behalf of a class (as defined in ¶ 21).

    6.      Plaintiff seeks a judgment declaring Defendants' conduct unlawful under § 2 of the Sherman Act, 15 U.S.C. § 2, and pursuant to § 16 of the Clayton Act, 15 U.S.C. § 26,

2

enjoining continuation of Defendants' monopolistic practices.

7.    Neither plaintiff nor the class seek any relief under § 4 of the Clayton Act, 15 U.S.C. § 15.

8.    Plaintiff and the class seek equitable remedies as to Defendants' unjust enrichment.

## JURISDICTION AND VENUE

9.    This Court has jurisdiction over this action pursuant to § 16 of the Clayton Act, 15 U.S.C. § 26, for injunctive and equitable relief to remedy Defendants' violations of the federal antitrust laws, particularly § 2 of the Sherman Antitrust Act, 15  U.S.C. § 2.

10.    Pursuant to the provisions of 15 U.S.C. § 22 and 28 U.S.C. § 1391(b), venue is properly laid in this judicial district because Defendants transact business, maintain offices or are found within this judicial district. Furthermore, the interstate commerce described below was, and is carried on, in part, within this judicial district and the monopolization and other wrongful conduct alleged in this Complaint was carried out, in part, within this judicial district.

## PARTIES

11.    Plaintiff, Mark S. Merado, is a resident of Kew Gardens, New York. Plaintiff purchased Toprol-XL at supra-competitive prices during the proposed Class Period.

12.    Defendant AstraZeneca Pharmaceuticals LP is a company organized and existing under the laws of Delaware, which distributes, markets, sells, and/or profits form pharmaceutical products including Toprol-XL throughout the United States. Its U.S. corporate headquarters is located at 1800 Concord Pike, Wilmington, DE. AstraZeneca Pharmaceuticals LP is a U.S. subsidiary of AstraZeneca PLC, and was created as a result of the union of Zeneca

3

Pharmaceuticals and Star Pharmaceuticals LP in the U.S. after the 1999 merger.

13.     Defendant AstraZeneca LP is a company organized and existing under the laws of

Delaware, with its principal place of business at Wilmington, Delaware. AstraZeneca LP holds

an approved New Drug Application for the United States Food and Drug Administration

("FDA") for metoprolol  succinate preparations with extended release, which it sells under the

brand name Toprol-XL. AstraZeneca LP is a U.S. subsidiary of AstraZeneca PLC.

14.     Defendant AstraZeneca AB is a company organized and existing under the law of

Sweden, having its principal place of business at S. 151 85 Sodertalje, Sweden.

15.     Defendant Aktiebolaget Hassle is a company organized and existing under the

laws of Sweden, having its principal place of business at Molndal, Sweden. Aktiebolaget Hassle

is a wholly-owned subsidiary of AstraZeneca AB.

16.     The acts charged in this Complaint as having been committed by the Defendants

were authorized, ordered or committed by their officers, agents, employees or representatives

while actively engaged in the management of the Defendants' business or affairs.

## INTERSTATE COMMERCE

17.     Defendants manufacture, distribute and sell Toprol-XL in a continuous and

uninterrupted indirect flow to the end-user plaintiff and the Class he represents.

18.     During the entire Class Period, Defendants sold and shipped substantial quantities

of Toprol-XL in a continuous and uninterrupted flow in interstate commerce to customers

located in states other than the states in which Defendants manufacture Toprol-XL.

19.     In addition, throughout the Class Period, in connection with the purchase and sale

of Toprol-XL, monies, as well as contracts, bills and other forms of business communication and

transactions were transmitted in a continuous and uninterrupted flow across state lines.

20.     The business activities of Defendants that are the subject of this Complaint were

within the flow of, and substantially affected, interstate trade and commerce.

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action as a class action, pursuant to Federal Rule of Civil

Procedure 23(a) and 23(b)(2) and/or 23(b)(3) on behalf of a class of indirect purchasers:

> All persons or entities throughout the United States of America and
> its territories, who purchased and/or paid, in whole or in part, for
> prescriptions of Toprol-XL or generic versions of Toprol-XL
> during the period May 5, 2005 through the present (the "Class
> Period") for consumption by themselves, their families, or their
> members, employees, insureds, participants or beneficiaries (the
> "Class"). For purposes of this class definition, persons and entities
> "purchased" Toprol-XL if they paid some or all of the purchase
> price.

Excluded from the Class are Defendants, their officers, subsidiaries and affiliates, and

government entities.

22.     Plaintiff does not, as of yet, know the exact size of the Class. However, based

upon the nature of the trade and commerce involved, plaintiff believes that the total number of

Class members is in the thousands, if not hundreds of thousands, and that Class members are

geographically dispersed throughout the United States. For that reason, joinder of all members

of the Class is not practicable.

23.     There are questions of law and/or fact common to the Class which predominate

over any questions affecting only individual members of the Class. Such common questions

include, without limitation, the following:

a.     the definition of the relevant market for analyzing Defendants' monopoly

power;

b.    whether Defendants had monopoly power in the relevant market;

c.    whether Defendants illegally obtained such monopoly power;

d.    whether Defendants illegally maintained monopoly power in the relevant market;

e.    whether competition has been restrained as a result of the alleged misconduct;

f.    whether Defendants engaged in the filing of sham patent litigation;

g.    whether the unlawful conduct of Defendants caused a delay of the manufacture and marketing of generic metoprolol succinate prescription drugs from May 5, 2005 through the present;

h.    whether plaintiff is entitled to declaratory and injunctive relief; and

i.    whether plaintiff and the Class members paid more for metoprolol succinate-based prescription drugs than they would have had to pay in a competitive market place, unfettered by Defendants' unlawful, fraudulent, unfair and anti-competitive conduct.

24.    Plaintiff's claims are typical of the Class because he and all members of the Class were injured and continue to be injured in the same manner by Defendants' unlawful, anti-competitive and inequitable methods, acts, practices and wrongful conduct in the conspiracies complained of herein, i.e., they have paid supra-competitive and artificially high prices for Toprol-XL and will continue to be forced to do so until the markets for Toprol-XL and its generic equivalents are competitive and prices have stabilized to competitive levels.

25.    Plaintiff will fairly and adequately protect the interests of the Class. The interests of the named plaintiff are coincident with, and not antagonistic to, those of the other members of the Class. Plaintiff has retained counsel who are experienced in the prosecution of antitrust and unfair competition class actions, and plaintiff will vigorously prosecute this case on behalf of the Class.

26.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. A class action would allow Plaintiff and the Class members to pursue claims that would be uneconomical to pursue individually. The Class is readily definable and is one for which records should exist. Prosecution as a class action will eliminate the possibility of repetitious litigation or inconsistent judgments.

27.    Defendants have acted or refused to act, as alleged herein, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and/or corresponding declaratory relief with respect to the Class as a whole.

## RELEVANT MARKETS

28.    To the extent applicable to the claims alleged herein, the relevant product market is the market for the manufacture and sale of Toprol-XL and all generic bioequivalents rated "AB" (defined below).

29.    The relevant geographic market is the United States.

30.    At all relevant times up to and including the present, Defendants' market share for Toprol-XL and its AB-rated generic equivalents in the relevant product and geographic markets was and is 100%.

7

## BACKGROUND

### The Federal Regulatory Scheme for Generic Drugs

31.     In 1984, Congress enacted the Drug Price Competition and Patent Term

Restoration Act 1984, Pub. L. No. 98-417, 98 Stat. 1585  (the "Hatch-Waxman Amendments"),

amending the Federal Food, Drug, and Cosmetics Act, 21 U.S.C. §§ 301-392.  Under the Food,

Drug, and Cosmetic Act, drug manufacturers must obtain FDA approval for any new drug by

filing a New Drug Application ("NDA"), which requires the submission of specific data

concerning the safety and effectiveness of the drug, as well as any information on applicable

patents.

32.     The FDA lists patents which apply to the new drug - the "pioneer drug" - in its

publication known as the Approved Drug Products With Therapeutic Equivalence Evaluations,

typically referred to as the "Orange Book."  To be properly listed in the Orange Book, the patent

must meet two statutory requirements.  First, the patent must "claim the drug" or "a method of

using such drug."  Second, the patent must be such that "a claim of patent infringement could

reasonably be asserted if a person not licensed by the owner engaged in the manufacture, use, or

sale of the drug."  21 U.S.C. §§ 355(b) and 355(c)(2).

33.     The Hatch-Waxman Amendments provide that companies may seek approval to

produce and market a generic form of a previously approved, or "pioneer" drug by filing only an

ANDA that relies on the safety and effectiveness findings reported in the NDA for the previously

approved drug.  One of Congress' central goals in enacting the Hatch-Waxman Act and the

ANDA provision was "to bring generic drugs onto the market as rapidly as possible."  Nova

Pharmaceutical Corp. v. Shalala, 140 F.3d 1060, 1068 (D.C. Cir. 1998).

8

34.     The ANDA must include information concerning the generic drug company's

position with respect to the patent for the previously approved drug, and must include one of four

certifications:

I.      that no patent for the pioneer drug has been filed with the FDA (a "Paragraph I
        Certification");

II.     that any patent listed in the FDA Orange Book for the pioneer drug has expired (a
        "Paragraph II Certification");

III.    that the patent for the pioneer drug will expire on a particular date and the generic
        drug company does not seek to market its generic product before that date (a
        "Paragraph III Certification"); or

IV.     that the patent for the pioneer drug is invalid or will not be infringed upon by the
        generic drug company's proposed product (a "Paragraph IV Certification").

35.     If the ANDA does not address all of the patents listed for a drug in the Orange

Book by means of one of the above four certifications, the FDA will not approve the generic

drug for sale.

36.     Where a generic drug is completely equivalent to a brand-name drug, the FDA

assigns the generic drug an "AB" rating. Only drugs that carry the FDA's AB generic rating

may be substituted by a pharmacist for a physician's prescription for a brand-name drug.

37.     Generic drugs are priced at a significant discount from the price of the brand-

name version, typically from 30 to 50 percent below the brand-name price. Where there is

competition from more than one generic manufacturer, prices decrease even further, and the

brand-name version loses market share - often up to 80% -- to the generic manufacturers.

Absent entry by generic manufacturers, there is little price competition.

## DEFENDANTS' FRAUDULENT CONDUCT

### Defendants Obtain Patents Fraudulently

38.    Defendants have falsely asserted that two patents cover Toprol-XL and its generic bioequivalent versions: U.S. Patent No. 5,001,161 (the "'161 patent") and U.S. Patent No. 5,081,154 (the "'154 patent") (collectively, the "Patents").

39.    The compound upon which Toprol-XL is based, metoprolol succinate, was invented in the 1960's by Hassle, then a Swedish pharmaceutical research and development company in Molndal, Sweden. Metoprolol succinate was effective in treating cardiovascular disease. Astra, which became the parent company of Hassle, researched versions of this compound to be used as a commercial metoprolol product. In 1971 an Astra chemist named Tovio Nitenberg invented the version chosen for commercialization, which became known as Lopressor.

40.    In the 1980's two Astra chemists, Curt Appelgren and Eva Eskilsson, participated in a research group formed by Astra to develop an extended release form of metoprolol. Appelgren and Eskilsson only worked with preparations for controlled release of the compound invented by Nitenberg.

41.    In 1982 Appelgren left Astra to form his own pharmaceutical research and development company, Lejus Medical, and a few months later he hired Eskilsson.

42.    In 1984 Lejus filed an application with the Swedish Patent Office for delayed and extended release dosage forms of metoprolol succinate; Appelgren and Eskilsson were listed as the inventors. The application was published in July 1985.

43.    In January 1985 the same patent was filed with the PTO and was issued on

10

October 25, 1988 (known as the '318 patent). The '318 patent is the parent and grandparent of the patents that are the subject of this suit, patents '161 and '154, respectively.

44.    In the Fall of 1985 Astra approached Lejus and asserted that Nitenberg at Astra had invented metoprolol succinate and the extended release version. Lejus did not dispute this claim.

45.    The two parties reached an agreement under which Lejus assigned the relevant patent applications to Astra.

46.    In March 1988 Lejus filed a patent application on behalf of Astra with the PTO (which became known as the '161 patent) which claimed 1) metoprolol succinate and 2) "a pharmaceutical composition, characterized in that the active compound is metoprolol succinate." The named inventors were Appelgren and Eskilsson, and the patent was filed as a continuation of the '318 patent.

47.    Lejus and Astra engaged in a dispute as to the inventorship of metoprolol succinate that lasted more than three years. When the '161 patent and its related patent, the '154 patent was filed, Astra failed to inform the PTO about its long-running dispute with Lejus, the Lejus/Hassle agreement, or that Toivo Nitenberg had invented metoprolol succinate in 1971.

48.    The information Defendants failed to disclose and/or misrepresented to the PTO was material, related directly to proper inventorship and derivation and would have precluded patentability under 35 U.S.C. s. 102(f).

49.    These omissions and/or misrepresentations were made deliberately with the intent to deceive, and they did in fact deceive the PTO, resulting in the issuance of the '161 and '154 patents.

## Defendants File a Sham Disclaimer

50.     Defendants' '318 patent, issued on October 25, 1998 was due to expire on October 25, 2005. Claim 8 of the '318 patent claimed "metoprolol succinate."

51.     Patents '161 and '154, due to expire on March 18, 2008, also claim "metoprolol succinate."

52.     The Patent Act, at the time patent '318 was filed, entitled Defendants to only 17 years of patent protection for metoprolol succinate and prohibited them from "double patenting" this compound in order to obtain more than 17 years of patent protection.

53.     Nonetheless, Defendants wrongfully and in bad faith disclaimed Claim 8 of the '318 patent in order to avoid double-patenting invalidity of the '161 and '154 patents and to obtain more than 17 years of patent protection. The disclaiming of Claim 8 of '318 had no legitimate grounds and is, effectively, a sham filing.

## Defendants' Cause Invalid Patents to be Listed in Orange Book

54.     Knowing that patents '161 and '154 were invalid, Defendants nonetheless listed the patents in the Orange Book as covering Toprol-XL, which ordinarily would reasonably give rise to a claim of patent infringement.

55.     Defendants filed their claims of infringement not on any legitimate grounds but solely because they knew that, under the Hatch-Waxman Act, if they filed suit to enforce patents in the Orange Book, they would receive an automatic injunction of up to 30 months. Such an injunction would bar competitors from entering the marketplace for metoprolol succinate products. Defendants' actions in causing the patents to be listed in the Orange Book, not informing the FDA that the '161 and '154 patents were invalid and not withdrawing the Orange

12

Book listings when Defendants knew that they were improper, were intentionally deceptive.

## Defendants File Sham Patent-Infringement Lawsuits Against Generic Manufacturers

56.    Knowing that the '161 and '154 patents were invalid, Defendants filed numerous patent-infringement lawsuits against generic drug manufacturers to prevent them from marketing generic versions of Toprol-XL. These actions were transferred to the Eastern District of Missouri for pre-trial proceedings.

57.    These suits filed by Defendants were objectively baseless, filed in bad faith with the sole  purpose of preventing the generic drug manufacturers from selling generic versions of Toprol-XL, which would compete with Toprol-XL and likely be sold at lower prices than Toprol-XL.

58.    Defendants knew that although they would not prevail on the merits of the lawsuits, the process of commencing these sham suits would automatically grant them an additional 30 months of monopoly power over metoprolol succinate products, barring generic manufacturers from competing for this period of time.

59.    On January 17, 2006 The Honorable Judge Rodney W. Sippel, of the United States District Court for the Eastern District of Missouri, granted summary judgment for the generic manufacturers, finding, *inter alia*, that the '161 and '154 patents were invalid for double patenting based on Claim 8 of the '318 patent, and that the '161 and '154 patents were unenforceable due to Astra's deliberate material omissions and misrepresentations to the PTO regarding the dispute over the actual inventor of metoprolol succinate. Judge Sippel found that the inventorship issue was "highly material" to patentability and that Astra clearly had an intent to deceive.

60.     Defendants' conduct during the sham patent-infringement suits further demonstrates their anti-competitive intent.

## **Anti-Competitive Effects**

61.     Defendants' unlawful exclusionary conduct has prevented competition in the market for metoprolol succinate-based prescription drugs.  As a result, Defendants sold Toprol-XL without any competition from generic versions of the drug.

62.     The prices for Toprol-XL have been fixed, raised, maintained or stabilized at artificially high and noncompetitive levels.

63.     As a result of Defendants' unlawful conduct, the ANDA approval process for generic versions of Toprol-XL has been delayed, forcing the generic manufacturers to divert resources from their applications and expend valuable resources on needless litigation.

64.     When the first generic version finally enters the market, its manufacturers will be entitled to 180 days of exclusivity in the market for that particular dosage strength.  As a result of Defendants' unlawful listing of their invalid patents in the Orange Book, the entry of other generic competitors will be further delayed, in turn further forestalling competition for metoprolol succinate products.

65.     Defendants have enjoyed a monopoly over Toprol-XL and its generic equivalents because they have had the power to maintain the price of Toprol-XL at supra-competitive levels. When competitors enter the market, Defendants will not be able to maintain their current prices without losing substantial sales.

66.     End-users of Toprol-XL have been deprived of the benefit of free and open competition in their purchases.

14

67.    Competition in the production and sale of Toprol-XL and its generic equivalents
has been restrained, suppressed and eliminated.

68.    Plaintiff and the other Class members paid more for Toprol-XL than they would
have had to pay under conditions of free and unrestricted competition.

69.    As a direct and proximate result of Defendants' wrongful conduct, Defendants
have wrongfully profited and obtained substantial monies from Plaintiff and the members of the
Class.

## COUNT I

### FOR DECLARATORY AND INJUNCTIVE RELIEF
### UNDER SECTION 16 OF THE CLAYTON ACT FOR VIOLATIONS
### OF SECTION 2 OF THE SHERMAN ACT

70.    Plaintiff incorporates by reference Paragraphs 1 through 69 as though fully set
forth herein.

71.    Section 2 of the Sherman Act states that it is illegal to monopolize or attempt to
monopolize any part of interstate trade or commerce.

72.    From May 5, 2005 through the present, Defendants have possessed 100%
monopoly power in the market for the manufacture and sale of metoprolol succinate-based
prescription drugs, including Toprol-XL and its generic versions, in the United States. But for
Defendants' unlawful anti-competitive conduct, as alleged herein, Defendants would have never
obtained monopoly power in the relevant market.

73.    Defendants knowingly and willfully acquired and maintained its monopoly power
through unlawful conduct including the filing of sham patent litigation in attempting to
unlawfully extend its patent for its metoprolol succinate-based products.

74.    Defendants filed the sham patent lawsuit for the anti-competitive purpose of delaying the introduction of generic versions of Toprol-XL into the market.

75.    Defendants' bad faith conduct was done with the intent and purpose, and had the effect, of obtaining and maintaining monopoly power and restraining competition in the relevant market.

76.    While obtaining and possessing unlawful monopoly power in the market for Toprol-XL, Defendants fixed, maintained, and raised the price of Toprol-XL to artificially high and/or supra-competitive levels.

77.    Plaintiff and the other members of the Class were injured by reason of Defendants' antitrust violations alleged in this Complaint. Their injury consists of paying higher prices for metoprolol succinate-based prescription drugs than they would have paid in the absence of these violations. Their injury is of the type the antitrust laws were designed to prevent and flows from Defendants' unlawful conduct.

78.    Pursuant to Rule 57 of the Federal Rules of Civil Procedure and 18 U.S.C. § 2201(a), Plaintiff and the Class are entitled to a declaration that Defendants' monopolization and attempts to monopolize the market for Toprol-XL and their generic equivalents violated §2 of the Sherman Act.

79.    Plaintiff and the Class are entitled to an injunction pursuant to §16 of the Clayton Act enjoining Defendants' continued monopolistic practices.

80.    Plaintiff and the Class have no adequate remedy at law.

16

## COUNT II

### FOR RESTITUTION, DISGORGEMENT AND CONSTRUCTIVE
### TRUST FOR UNJUST ENRICHMENT BY DEFENDANT

81.    Plaintiff repeat and incorporate herein by reference paragraphs 1 through 69 of this Complaint as if fully set forth herein.

82.    Defendants have benefited from the monopoly profits on their sale of Toprol-XL resulting from their unlawful and inequitable acts alleged in this Complaint.

83.    Defendants' financial benefits resulting from their unlawful and inequitable conduct are traceable to overpayments for Toprol-XL by Plaintiff and the Class.

84.    Plaintiff and the Class have conferred an economic benefit upon Defendants in the nature of profits resulting from unlawful overcharges and monopoly profits, to the economic detriment of Plaintiff and the Class.

85.    The economic benefit of overcharges and monopoly profits derived by Defendants by charging supra-competitive and artificially high prices for Toprol-XL is a direct and proximate cause of Plaintiff's injury.

86.    The financial benefits derived by Defendants rightfully belong to the Plaintiff and the Class, as plaintiff and the Class paid supra-competitive and monopolistic prices during the class period inuring to the benefit of Defendants.

87.    It would be inequitable for Defendants to be permitted to retain any of the unlawful proceeds resulting from Defendants' fraudulent conduct in the filing of sham patent litigation.

88.    It would be inequitable for Defendants to be permitted to retain any of the

17

overpayments for Toprol-XL made by Plaintiff and the Class which were derived from

Defendants' unlawful and anti-competitive methods, acts and trade practices, as alleged in this

Complaint.

89.    Defendants should be compelled to disgorge into a common fund for the benefit

of Plaintiff and the Class all unlawful or inequitable proceeds they have received.

90.    A constructive trust should be imposed upon all unlawful or inequitable monies

received by Defendants traceable to plaintiff and the Class.

91.    Plaintiff and the Class have no adequate remedy at law.

## COUNT III

### VIOLATIONS OF STATE ANTITRUST AND UNFAIR COMPETITION LAWS

92.    Plaintiff incorporates and realleges, as though fully set forth herein, each and

every allegations set forth in the preceding paragraphs of this Complaint.

93.    By reason of the foregoing, Defendants have violated Alabama Code §§ 8-10-1 *et

seq*.

94.    By reason of the foregoing, Defendants have violated Arizona Revised Stat. Code

§§ 44-1401 *et seq*.

95.    By reason of the foregoing, Defendants have violated California Bus. & Prof. §§

16700 *et seq*. and Cal. Bus. & Prof. Code §§ 17200 *et seq*.

96.    By reason of the foregoing, Defendants have violated District of Columbia Code

Ann. §§ 28-4503 *et seq*.

97.    By reason of the foregoing, Defendants have violated Florida Stat. §§ 501.201 *et

seq*.

98.    By reason of the foregoing, Defendants have violated Iowa Code §§ 553.1 *et seq*.

99.     By reason of the foregoing, Defendants have violated Kansas Stat. Ann. §§ 50-101 *et seq.*

100.    By reason of the foregoing, Defendants have violated Maine Rev. Stat. Ann. 10, § 1101 *et seq.*

101.    By reason of the foregoing, Defendants have violated Michigan Comp. Laws. Ann §§ 445.773 *et seq.*

102.    By reason of the foregoing, Defendants have violated Minnesota Stat. §§ 325D.52 *et seq.*

103.    By reason of the foregoing, Defendants have violated Mississippi Code Ann. § 75.21.1 *et seq.*

104.    By reason of the foregoing, Defendants have violated Nebraska Rev. Stat. §§ 59.801 *et seq.*

105.    By reason of the foregoing, Defendants have violated Nevada Rev. Stat. Ann. §§ 598A *et seq.*

106.    By reason of the foregoing, Defendants have violated New Mexico Stat. Ann. §§ 57-1-1 *et seq.*

107.    By reason of the foregoing, Defendants have violated New York Gen. Bus. Law §§ 340, 349 *et seq.*

108.    By reason of the foregoing, Defendants have violated North Carolina Gen. Stat. §§ 75-1 *et seq.*

109.    By reason of the foregoing, Defendants have violated North Dakota Cent. Code §§ 51-08.1-01 *et seq.*

110.    By reason of the foregoing, Defendants have violated Ohio Rev. Code Ann. §§ 1331.01 *et seq.*

111.    By reason of the foregoing, Defendants have violated South Dakota Codified

Laws Ann. §§ 37-1 *et seq.*

112.    By reason of the foregoing, Defendants have violated Tennessee Code Ann. §§ 47-25-101 *et seq.*

113.    By reason of the foregoing, Defendants have violated Vermont Stat. Ann. 9 §§ 2453 *et seq.*

114.    By reason of the foregoing, Defendants have violated West Virginia §§ 47-18-1 *et seq.*

115.    By reason of the foregoing, Defendants have violated Wisconsin Stat. §§ 133.01 *et seq.*

116.    Class members in each of the states listed above paid and continue to pay substantially higher, supra-competitive prices for Toprol-XL than they would have if competing and/or generic versions of the drug were available.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class he seeks to represent pray for judgment against Defendants for the following relief:

        a.    For an order certifying the Class pursuant to Federal Rule of Civil Procedure 23, certifying plaintiff as the representative of the Class and designating his counsel as counsel for the Class;

        b.    for an order that Defendants' actions violate § 2 of the Sherman Act;

        c.    for an order that Defendants' actions constitute a violation of the antitrust laws;

        d.    for an injunction enjoining and restraining Defendants' continued violation of §2 of the Sherman Act, pursuant to §16 of the Clayton Act;

        e.    for an order granting Plaintiff and the Class equitable relief in the nature of disgorgement, restitution and the creation of a constructive trust to remedy Defendants' unjust enrichment;

f.    for an order granting to Plaintiff and the Class the costs of prosecuting this action, together with the interest and reasonable attorneys' fees, experts' fees and costs; and

g.    for an order awarding Plaintiff and the Class damages and, where applicable, treble, multiple, and other damages, according to the laws of the indirect purchaser states, including interest.

h.    for an order granting such further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all claims so triable asserted in this Complaint.


Date: February 2, 2006

**CHIMICLES & TIKELLIS LLP**


By: _____

Pamela S. Tikellis (#2172)
Robert R. Davis (#4536)
One Rodney Square
P.O. Box 1035
Wilmington, DE 19899
Telephone: (302) 656-2500
Fax: (302) 656-9053

**WOLF POPPER LLP**
Lester L. Levy
845 Third Avenue
New York, NY 10022
Telephone: (212) 759-4600
Fax: (212) 486-2093


and

**ANN D. WHITE LAW OFFICES, P.C.**
Ann D. White
Mandy Roth
One Pitcairn, Suite 2400
165 Township Line Road
Jenkintown, PA 19046
Telephone: (215) 481-0274
Fax: (215) 481-0271

Attorneys for Plaintiff

≈JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS MARK S. MERADO, on behalf of himself and all other persons and entities similarly situated, | DEFENDANTS ASTRAZENECA PHARMACEUTICALS LP ASTRAZENECA LP, ASTRAZENECA AB, and AKTIEBOLAGET HASSLE |
|---|---|
| (b) County of Residence of First Listed Plaintiff **Queens County,NY** (EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant _____ (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |
| (c) Attorney's (Firm Name, Address, and Telephone Number) **(302)656-2500** Chimicles & Tikellis LLP, One Rodney Square, Wilmington, DE 19801 | Attorneys (If Known) |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

❑ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
❑ 2 U.S. Government Defendant
❑ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❑ 1 | ❑ 1 | Incorporated or Principal Place of Business In This State | ❑ 4 | ❑ 4 |
| Citizen of Another State | ❑ 2 | ❑ 2 | Incorporated and Principal Place of Business In Another State | ❑ 5 | ❑ 5 |
| Citizen or Subject of a Foreign Country | ❑ 3 | ❑ 3 | Foreign Nation | ❑ 6 | ❑ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ❑ 110 Insurance | **PERSONAL INJURY** ❑ 310 Airplane | ❑ 610 Agriculture | ❑ 422 Appeal 28 USC 158 | ❑ 400 State Reapportionment |
| ❑ 120 Marine | ❑ 315 Airplane Product | **PERSONAL INJURY** ❑ 362 Personal Injury - Med. Malpractice | ❑ 423 Withdrawal 28 USC 157 | ☒ 410 Antitrust |
| ❑ 130 Miller Act | Liability | ❑ 620 Other Food & Drug | | ❑ 430 Banks and Banking |
| ❑ 140 Negotiable Instrument | ❑ 320 Assault, Libel & | ❑ 365 Personal Injury - Product Liability | ❑ 625 Drug Related Seizure of Property 21 USC 881 | ❑ 450 Commerce |
| ❑ 150 Recovery of Overpayment & Enforcement of Judgment | Slander ❑ 330 Federal Employers' | ❑ 368 Asbestos Personal Injury Product | **PROPERTY RIGHTS** ❑ 820 Copyrights | ❑ 460 Deportation ❑ 470 Racketeer Influenced and |
| ❑ 151 Medicare Act | Liability | ❑ 630 Liquor Laws | ❑ 830 Patent | Corrupt Organizations |
| ❑ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ❑ 340 Marine ❑ 345 Marine Product | Liability **PERSONAL PROPERTY** | ❑ 640 R.R. & Truck ❑ 650 Airline Regs. | ❑ 840 Trademark ❑ 480 Consumer Credit |
| ❑ 153 Recovery of Overpayment of Veteran's Benefits | Liability ❑ 350 Motor Vehicle | ❑ 370 Other Fraud ❑ 371 Truth in Lending | ❑ 660 Occupational Safety/Health | ❑ 490 Cable/Sat TV ❑ 810 Selective Service |
| ❑ 160 Stockholders' Suits | ❑ 355 Motor Vehicle | ❑ 380 Other Personal | ❑ 690 Other | ❑ 850 Securities/Commodities/ |
| ❑ 190 Other Contract | Product Liability | Property Damage | **LABOR** | Exchange |
| ❑ 195 Contract Product Liability | ❑ 360 Other Personal | ❑ 385 Property Damage Product Liability | ❑ 710 Fair Labor Standards Act | **SOCIAL SECURITY** ❑ 861 HIA (1395ff) | ❑ 875 Customer Challenge 12 USC 3410 |
| ❑ 196 Franchise | Injury | | ❑ 720 Labor/Mgmt. Relations | ❑ 862 Black Lung (923) | ❑ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❑ 730 Labor/Mgmt.Reporting & Disclosure Act | ❑ 863 DIWC/DIWW (405(g)) ❑ 864 SSID Title XVI | ❑ 891 Agricultural Acts ❑ 892 Economic Stabilization Act |
| ❑ 210 Land Condemnation | ❑ 441 Voting | ❑ 510 Motions to Vacate | ❑ 740 Railway Labor Act | ❑ 865 RSI (405(g)) | ❑ 893 Environmental Matters |
| ❑ 220 Foreclosure | ❑ 442 Employment | Sentence | ❑ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ❑ 894 Energy Allocation Act |
| ❑ 230 Rent Lease & Ejectment | ❑ 443 Housing/ | **Habeas Corpus:** | ❑ 791 Empl. Ret. Inc. | ❑ 870 Taxes (U.S. Plaintiff | ❑ 895 Freedom of Information |
| ❑ 240 Torts to Land | Accommodations | ❑ 530 General | Security Act | or Defendant) | Act |
| ❑ 245 Tort Product Liability | ❑ 444 Welfare | ❑ 535 Death Penalty | | ❑ 871 IRS—Third Party 26 USC 7609 | ❑ 900Appeal of Fee Determination Under Equal Access |
| ❑ 290 All Other Real Property | ❑ 445 Amer. w/Disabilities - Employment | ❑ 540 Mandamus & Other ❑ 550 Civil Rights | | | to Justice |
| | ❑ 446 Amer. w/Disabilities - Other | ❑ 555 Prison Condition | | | ❑ 950 Constitutionality of State Statutes |
| | ❑ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
❑ 2 Removed from State Court
❑ 3 Remanded from Appellate Court
❑ 4 Reinstated or Reopened
❑ 5 Transferred from another district (specify)
❑ 6 Multidistrict Litigation
❑ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Sherman Antitrust Act 15 U.S.C. §2
Brief description of cause: Civil antitrust action in connection with the monopolization of market for Toprol -XL

| VII. REQUESTED IN COMPLAINT: | ☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ ____ | CHECK YES only if demanded in complaint: JURY DEMAND: ☒ Yes ❑ No |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY | (See instructions): JUDGE **GMS** | DOCKET NUMBER **06-cv-52 GMS** **06-cv-63 GMS** |
|---|---|---|

| DATE **2-2-06** | SIGNATURE OF ATTORNEY OF RECORD _____ Robert R. Davis (#4536) |
|---|---|

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|